# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **J.H.,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-3520 |
| **CITY OF PHILADELPHIA et al.,** | : | |
| Defendants. | : | |

## MEMORANDUM

PRATTER, J.  JANUARY 12, 2018

### BACKGROUND

Alleging that Officer Thomas O'Neill sexually assaulted her, J.H. brought suit in state court against four defendants: the City of Philadelphia, Police Commissioners Charles Ramsey and Richard Ross, and Officer O'Neill. Officer O'Neill had not been served when his co-defendants removed the case to this Court. *See J.H. v. City of Phila.*, No. 17-CV-3520, 2017 WL 5668051, at *1 (E.D. Pa. Nov. 27, 2017).

Now, Officer O'Neill has been served and has filed a motion to remand. His fellow defendants object to this motion, arguing that Officer O'Neill was fraudulently joined and is simply a nominal party. Although defendants served after removal can generally move to remand a case back to state court, the Court must decide whether an agreement between Officer O'Neill and J.H. renders Officer O'Neill a mere "nominal party" whose motion to remand should not control the forum for this litigation.

Officer O'Neill is neither a nominal party, nor does the record permit a finding that he was fraudulently joined. Therefore, the Court grants Officer O'Neill's motion to remand.

## AGREEMENT BETWEEN J.H. AND OFFICER O'NEILL

The question whether Officer O'Neill is a nominal party turns on a November 10, 2017 agreement between him and J.H. styled as a "Covenant Not to Execute." The pertinent terms of the agreement are:

- **Removal**: Officer O'Neill promises to object to removal. (He did so later in November but, at the point of entering the agreement, he stopped short of affirmatively *moving* to remand.)

- **Execution of Judgment**: J.H. promises not to enforce any personal judgment against Officer O'Neill.

- **Indemnification and Contribution**: J.H. promises that any settlement agreement she reaches with the other defendants will prohibit them from pursuing indemnification or contribution from Officer O'Neill.

- **Meet Before Trial**: Officer O'Neill promises to be accessible to J.H. as she prepares her case against the City by providing "truthful and accurate answers to questions asked by [J.H.'s] counsel regarding incidents of sexual harassment within the City of Philadelphia Police Department." If the case goes to trial, Officer O'Neill promises to meet again with J.H.'s counsel "to review his potential trial testimony, if any."

In short, J.H. enlisted Officer O'Neill's assistance in returning the case to state court, in exchange for a promise not to execute on any future judgment obtained against Officer O'Neill. The agreement does not include any release, nor does Office O'Neill concede any liability.

## ANALYSIS

Officer O'Neill was not served until after this case was removed to federal court. Under 28 U.S.C. § 1448, a defendant served after removal may move to remand the case back to state court, which is precisely what Officer O'Neill has done here.

Officer O'Neill's co-defendants do not dispute that § 1448 normally gives later-served defendants the ability essentially to veto the removal to federal court. This veto power is an instantiation of the "unanimity rule," in which all served defendants must consent to removal.

The co-defendants argue, instead, that this case fits two exceptions to the unanimity rule: a defendant that is (1) a nominal party or (2) fraudulently joined "may be disregarded" for purposes of the unanimity rule. *See Balazik v. Cty. of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995).

### *A. Rule for Nominal Parties and Fraudulent Joinder*

"Nominal parties are generally those without a real interest in the litigation." *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991); *see also Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 358 (3d Cir. 2013) (same). This rule ensures that only those parties with a palpable interest in the outcome of a case determine the forum. Unfortunately, the definition of "nominal party" is quite vague in practice: "The question of whether or not a named defendant is a nominal party depends on the facts in each case." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970).

For that reason, courts tend to fold the nominal-party exception into the rule for fraudulent joinder. *See, e.g.*, *Bancorp, Inc. v. Yaron*, No. 14-CV-7159, 2015 WL 4876330, at *2 (E.D. Pa. Aug. 14, 2015). In *Bancorp*, this Court articulated a two part test for fraudulent joinder:

First, the Court "accept[s] as true all allegations" in the complaint, and "if there is even a possibility that a state court would find that the complaint states a cause of action" against the defendant in question, then joinder was proper. *Id.* (quoting *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006)). This first step "overlaps largely with the analysis for determining whether a party is nominal." *Id.*

Second, the Court asks whether the plaintiff "intends in good faith to prosecute the action" against the allegedly fraudulently joined defendant. *Id.* At this step, the Court may

3

"look beyond the pleadings 'to identify indicia of fraudulent joinder.'" *Id.* (quoting *Briscoe*, 448 F.3d at 219).

### B. Application

#### 1. Part One: Cause of Action on the Face of the Complaint

J.H. has satisfied the first part of the two-part test. Without straying from the pleadings, which allege that Officer O'Neill sexually assaulted J.H., the Court can conclude that J.H. has articulated a cause of action against Officer O'Neill. At the very least, the Court cannot conclude that "recovery from [Officer O'Neill] is a clear legal impossibility." *See Chaborek v. Allstate Fin. Servs., LLC*, 254 F. Supp. 3d 748, 751 (E.D. Pa. 2017) (quoting *Salley v. AMERCO*, No. 13-CV-921, 2013 WL 3557014, at *3 (E.D. Pa. July 15, 2013)).

#### 2. Part Two: Intent to Prosecute the Action

The question becomes more complicated at the second part of the two-part test, when the Court "must look beyond the allegations of [J.H.'s] complaint," including an inquiry into her conduct. *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985). The crucial question is whether J.H.'s conduct demonstrates that she has "no real intention in good faith to prosecute the action" against Officer O'Neill. *See In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 419 (E.D. Pa. 2002) (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)); *see also Briscoe*, 448 F.3d at 216 (quoting *Abels*, 770 F.2d at 32).

In this case, the most useful indicia, one way or the other, of J.H.'s intent to prosecute her case against Officer O'Neill is the "Covenant Not to Execute" between J.H. and Officer O'Neill. And, as the parties perceived, the most analogous case is *Bancorp*. *Bancorp* held that certain defendants were not fraudulently joined, despite an agreement between them and the plaintiff

much like the one between Officer O'Neill and J.H. The agreements are similar in three respects.

First, the *Bancorp* defendants promised to object to removal, just as Officer O'Neill did here. *See Bancorp*, 2015 WL 4876330, at *4. Indeed, the attorney for one defendant in *Bancorp* told the attorneys for the defendants seeking removal that "we cannot consent [to removal] as I agreed under our settlement agreement . . . that they call the shots in the litigation as *we are merely nominal parties*." *Id.* (emphasis added). Nevertheless, the Court concluded that the no-removal provision was little more than a forum selection clause, noting that "[e]stablishing fraudulent joinder requires showing more than that certain parties cannot and will not consent to removal — it must also be shown the plaintiff does not intend to prosecute its action in good faith against those parties." *Id.* Similarly, Officer O'Neill's agreement not to consent to removal acts as a forum selection clause and, therefore, is not alone enough to render Officer O'Neill a fraudulently joined party.

Second, the *Bancorp* plaintiff promised not to execute any eventual judgment against the defendants. Again, the Court concluded that such a promise did not necessarily render the defendants fraudulently joined. The Court distinguished between a promise not to *execute* a judgment and a promise not to *obtain* a judgment in the first place: "the relevant inquiry is whether [the plaintiff] intends to obtain a judgment against [the defendants], not whether the damages obtained are ultimately collectible." *Id.* Here, J.H. has done the *Bancorp* plaintiff one better: she has promised not only to refrain from executing any judgment against Officer O'Neill, but also to block any of Officer O'Neill's co-defendants from pursuing indemnification or contribution from him. Still, as in *Bancorp*, J.H. has not promised not to "obtain a judgment"

against Officer O'Neill. Therefore, J.H.'s promises regarding enforcing any judgment and blocking indemnification do not make Officer O'Neill fraudulently joined.

Third, the agreement in *Bancorp* did not release all of the plaintiff's claims against the defendants at issue. The Court noted that the agreement released only the plaintiff's claim to debts accrued by the defendants — but not necessarily the plaintiff's "claims for acts of fraud in obtaining and maintaining the loans." *Id.* at 3. Similarly, in the agreement here, J.H. plainly does not release all of her claims against Officer O'Neill — in fact, she does not appear to release *any* of them. The absence of anything approaching a "full release" weighs against a finding that Officer O'Neill has been fraudulently joined.

To be sure, all three similarities between this case and *Bancorp* — a promise to object to removal, a promise not to execute a judgment, and an incomplete release — are merely "suspicious circumstances." *Id.* In other words, they are simply probative, in one direction or another, of the answer to the underlying question: does J.H. intend to pursue her claims against Officer O'Neill?

This case does have one arguably "suspicious circumstance" that *Bancorp* lacked: Officer O'Neill agreed to meet with J.H. during her trial preparations and answer certain questions about the case. But meeting with one's opponent before trial is not inconsistent with, or unheard of in, our adversarial system of justice. And the Court's suspicions are further mitigated given that questions about the alleged sexual assault are off-limits under the agreement. *See* Resp. to Mot. Remand, Doc. No. 24, Ex. A ¶ 8. Officer O'Neill's refusal to discuss what transpired between him and J.H. strikes the Court as adversarial indeed.

At bottom, the standard for fraudulent joinder is not whether J.H. and Officer O'Neill are discussing portions of the case — they plainly are — but whether J.H. intends to pursue claims

against Officer O'Neill at trial. In *Bancorp*, the plaintiff "represented that it intend[ed] to do so, with the expectation that [the defendants would] defend themselves." *Id.* at *4. Similarly, here, J.H. intends to pursue her claims against Officer O'Neill. Indeed, she needs a verdict against Officer O'Neill in order to obtain a judgment against the City. Even the City agrees with this analysis: for the City to have any liability, a jury must find Officer O'Neill committed wrongdoing.

For his part, Officer O'Neill vigorously denies the allegations against him. Given the severe allegations in this case, his reputation is at stake. Even if Officer O'Neill never pays a cent of any judgment, then, he still has "skin in the game." Thus, the Court concludes that he is neither a nominal party nor fraudulently joined.

## CONCLUSION

For the foregoing reasons, Officer O'Neill's motion to remand is granted. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE